STATE of Missouri, Respondent,

v.

Keith DANBACK, Appellant.

Keith DANBACK, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 61955, 64844.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 1, 1994.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant appeals after a jury convicted him of forcible rape, in violation of § 566.030, RSMo Supp.1993, and the motion court denied his Rule 29.15 motion. We affirm.

Since Defendant does not challenge the sufficiency of the evidence, only a brief recitation of the facts supporting the jury's verdict is necessary. On June 4, 1990, Victim, who was then fourteen years old, travelled with her parents and her younger cousin, Angie, from Jonesboro, Arkansas to Desoto, Missouri, to attend a graduation party. There were about fifty people at the outdoor barbecue, including Defendant and Victim's younger cousins Debbie and Jennifer. Victim did not know Defendant before they met at the party. He supplied her and her younger cousins with beer, although they were not allowed to drink. He also gave Victim

some kind of mixed drink. At approximately 9:30 p.m., Victim went to the camper trailer where she was supposed to sleep with her three cousins: Angie, Debbie and Jennifer. She was feeling drunk and she "passed out" as soon as she reached the camper and got into the top bunk.

At some point after Victim had fallen asleep, she was awakened by the sound of Angie, Debbie and Jennifer yelling at Defendant to get off of her. Defendant was on top of Victim, holding her arms down and having intercourse with her. Victim yelled at Defendant to get off her and tried to push him away. Defendant put his hand over Victim's mouth and continued to rape her. Defendant yelled at Victim's cousins and told them to leave. They went to get Kurt Kemp, one of their older cousins, but he refused to help because he did not believe Defendant would do such a thing.

When the girls got back to the camper, Defendant was getting off Victim. He stated he was "through with her anyway" and called Victim a slut and a whore. After Defendant left, Victim began crying, but she would not let her cousins go for help because she was afraid that they would get in trouble for drinking, or that Defendant would come back and hurt her. Around 5 a.m., Victim asked Jennifer and Angie to accompany her to the house because she wanted to take a bath and was afraid to be alone. When Victim undressed, they saw she had bruises on both arms, both legs and one hip.

The next day Victim returned to Arkansas with her family. Approximately one week later, Angie and Jennifer told their Aunt Mary what had happened to Victim. Aunt Mary told Victim's mother, who took Victim to be examined by the family physician. Victim's mother then brought her back to Missouri to file charges against Defendant.

At the close of all evidence, arguments and instructions, the jury found Defendant guilty of forcible rape and recommended a sentence of seventeen years' imprisonment. On April 28, 1992, the trial court sentenced Defendant pursuant to the jury's recommendation. On August 27, 1992, Defendant filed his *pro se* Rule 29.15 motion. Counsel was appointed, and Defendant filed a waiver of an amended

motion and an election to stand on his *pro se* motion. After holding an evidentiary hearing, the motion court entered findings of fact and conclusions of law denying Defendant's Rule 29.15 motion.

In Point I, Defendant alleges the trial court abused its discretion by sustaining the prosecutor's motions in limine and precluding Defendant from presenting evidence of: (A) Victim's "sexual conduct" with James Kline earlier in the evening of the rape because it was admissible under § 491.015.1(3), RSMo 1986, as evidence of the immediate surrounding circumstances of the crime; (B) Kline's father's abusive behavior toward Defendant and the Defendant's investigator, as it was evidence of Victim's and her cousins' motive to fabricate their stories; and (C) Kline's statement that he "did it" with Victim because it was a statement against penal interest.

## A. Admissibility of Prior Sexual Conduct Pursuant to § 491.015

On appeal, Defendant argues the trial court erred in excluding evidence of Victim and Kline's sexual contact earlier on the night of the rape because it was admissible as evidence of the immediate surrounding circumstances of the rape under § 491.015.1(3). Section 491.015, the Rape Shield Statute, states in pertinent part:

1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(3) Evidence of immediate surrounding circumstances of the alleged crime;

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

3. *If the defendant proposes to offer evidence of the sexual conduct of the com-*

*plaining witness under this section, he shall file with the court a written motion accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury.* The court shall hold an in camera hearing to determine the sufficiency of the offer of proof and may at that hearing hear evidence if the court deems it necessary to determine the sufficiency of the offer of proof.

Prior to trial, the court sustained the prosecutor's motion in limine to exclude evidence of any prior sexual contact between Victim and Kline under § 491.015. The trial judge invited Defendant to make an offer of proof to rebut the prosecutor's argument. Defendant failed to make any such offer of proof either at the pre-trial hearing or at trial; therefore, he failed to comply with the mandatory requirements of § 491.015.3. At trial, defense counsel questioned Victim about her previous sexual contact with Kline as follows:

[DEFENSE COUNSEL]: There was also another young boy at the party you are playing around with; correct?

[VICTIM]: Yes.

[DEFENSE COUNSEL]: Do you know that young boys name?

[PROSECUTOR]: Objection, your Honor. I like to renew my objection.

(Discussion at the Bench out of the hearing of the jury.)

THE COURT: Where are you going?

[DEFENSE COUNSEL]: I am trying to find out if she knows the guy's name. I don't know any other way to establish that he was there. Whether she was playing around with the other boy.

THE COURT: What do you mean by the words "playing around"?

[DEFENSE COUNSEL]: Talking to him visiting with him.

[PROSECUTOR]: Your Honor, that is exactly the thing the Rape Shield Statute is supposed to protect, relationships with other persons are not relevant in a rape case.

[DEFENSE COUNSEL]: Your Honor, I have not—

THE COURT: What exactly—Let's assume that I let you put it in, what would the evidence be?

[DEFENSE COUNSEL]: The evidence would be that she was there, they are messing around, playing around, right. Not messing around. She was talking and they were holding hands and may have been kissing. And that is basically it.

[PROSECUTOR]: Your Honor.

THE COURT: Just a minute, there was no other physical contact that you're aware of.

[DEFENSE COUNSEL]: Not that I'm aware of.

THE COURT: I'll sustain the objection.

First, defense counsel's own statements at trial indicate there was no "sexual contact" between Victim and Kline earlier on the night of the rape. Further, the Missouri Supreme Court has held evidence of specific instances of a rape victim's prior sexual conduct is admissible only when it falls within one of the specific exceptions contained in § 491.015.1(1)–(4), and then only to the extent the trial court finds it relevant to a material fact or issue under § 491.015.2. *State v. Jones,* 716 S.W.2d 799, 800[1] (Mo. banc 1986); *State v. Miller,* 870 S.W.2d 242, 245[2] (Mo.App.1994). Defendant failed to show how evidence that Victim and Kline were holding hands and kissing earlier on the evening of the rape was relevant to any issues in this case. It was not being offered to rebut the State's physical evidence, as in *State v. Douglas,* 797 S.W.2d 532 (Mo.App. 1990), as no physical evidence was offered by the State. Further, it was not evidence of the "immediate surrounding circumstances" of the rape as Defendant alleges, as the rape occurred after Kline had already left the party and was witnessed by Victim's three cousins who all identified Defendant as the rapist. *See, State v. Osterloh,* 773 S.W.2d 213, 218–19[4] (Mo.App.1989).

**B. Admissibility of Evidence of Kline's Father's Abusive Behavior**

▮▮▮ In the second subpoint of Defendant's Point I, he argues the trial court abused its discretion in excluding evidence of Kline's father's threats to Defendant and his investigator because they were relevant to show Victim had a motive to fabricate. In

the argument portion of his brief, Defendant also argues the evidence was relevant to show Kline's father was attempting to protect him from prosecution. However, because Defendant did not include this argument in his point relied on, it is not preserved for review on appeal. Rule 84.04(d); *State v. Hill*, 812 S.W.2d 204, 208[5] (Mo. App.1991). Moreover, Defendant fails to cite any legal authority to show the evidence of Kline's father's alleged threats is admissible under either theory. *See, State v. Fraction*, 782 S.W.2d 764, 768[6] (Mo.App.1990) (failure to cite any legal authority for a proposition provides grounds for dismissal without review). In his brief, Defendant merely argued, "[b]ecause the evidence of [Victim] and [Kline's] sexual contact . . . was relevant and admissible, [Kline's] father's threats against [Defendant] were also relevant." Since we found the alleged sexual contact between Victim and Kline was not relevant, we also find the evidence of Kline's father's threats was not relevant.

## C. Admissibility of Kline's Statement as a Statement Against Penal Interest

█ In his third subpoint, Defendant alleges the trial court erred in excluding evidence of Kline's comment to Kim English that he "did it" with Victim because it was admissible as a statement against Kline's penal interest. Prior to trial, the trial judge granted the prosecutor's motion in limine to exclude this evidence in light of the three eyewitnesses who saw Defendant raping Victim, but stated he would reconsider the ruling depending on what the State's evidence showed. However, Defendant did not attempt to call English as a witness at trial, nor did he make an offer of proof as to the admissibility of this evidence. On appeal, Defendant argues the evidence was admissible as a statement against penal interest. However, Defendant also did not raise this specific theory of admissibility at trial. Defendant's argument is not properly preserved for appellate review. *See, State v. Purlee*, 839 S.W.2d 584, 592[23] (Mo. banc 1992); *State v. Shannon*, 795 S.W.2d 426, 428[1] (Mo.App.1990).

█ Further, we have reviewed Defendant's argument *ex gratia* and find it lacking in merit. As a general rule, a declaration against penal interest is not admissible as an exception to the hearsay rule in a criminal trial. *State v. Blankenship*, 830 S.W.2d 1, 6[1] (Mo. banc 1992). However, such a statement is admissible as a due process right if the declarant is shown to be unavailable as a witness; there are considerable assurances of the statement's reliability; and the statement, if true, would exonerate Defendant. *See, Id. citing, Chambers v. Mississippi*, 410 U.S. 284, 300, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1973); *State v. Jennings*, 815 S.W.2d 434, 448[23] (Mo.App.1991). Defendant failed to show Kline was unavailable as a witness. In fact, in his brief, Defendant admits Kline was subpoenaed by the defense and was available as a witness. Further, Kline's statement to English that he "did it" with Victim, even if true, is certainly not an admission that he raped her on June 4, 1990, and therefore it does not necessarily exonerate Defendant. *See, Id.* at 7–8[2]. Defendant also failed to establish the statement met any of the following indicators of reliability identified by the United States Supreme Court in *Chambers v. Mississippi:* (1) the confession was "in a real sense self-incriminatory and unquestionably against interest"; (2) the statement was spontaneously made to a close acquaintance; and (3) the statement was corroborated by other evidence in the case. 410 U.S. at 300–01, 93 S.Ct. at 1048; *See also, State v. Blackman*, 875 S.W.2d 122, 141[51] (Mo.App.1994). Point denied.

In Point II, Defendant alleges the trial court erred in failing to grant a mistrial *sua sponte* after the prosecutor made the following comments during his closing argument:

Rape is one of the hardest crimes to prosecute. Women don't want—

[DEFENSE COUNSEL]: Object. This is outside of the scope of the evidence.

THE COURT: Well, overruled.

[PROSECUTOR]: You heard on voir dire two or three woman [sic] say, Yes, I was raped. I knew someone who was raped, but they never told, never recorded [sic] it to the police. Why? Because no woman in her right mind wants to subject herself

to what she has to to report a rape. She has got to tell—this fourteen year old girl had to tell the details of the most intimate parts of her body. Get up there on the stand and reveal to you what that man had done to her. To tell twelve strangers in a courtroom of people intimate details of the rape. Why any girl in her right mind would ever want to come in and tell what had happened to her can be understood. Women don't want to report rapes because nothing is done about them.

You can do something about it. You're in the position to do something about it.

■ Because Defendant failed to make a motion for a mistrial following the prosecutor's comments, this claim can be reviewed only for plain error. *See, State v. Sandy*, 882 S.W.2d 232, 234–35 (Mo.App.1994); *State v. Cole*, 844 S.W.2d 493, 499[12] (Mo.App.1992). In order to be entitled to relief under this standard, Defendant must show the alleged error will result in manifest injustice or a miscarriage of justice if left uncorrected. *State v. Parker*, 856 S.W.2d 331, 332[2] (Mo. banc 1993).

■ The granting of a mistrial is a drastic remedy and should only be exercised in extraordinary circumstances where the prejudice to the defendant cannot be removed in any other way. *State v. Schneider*, 736 S.W.2d 392, 400[3] (Mo. banc 1987). Because the trial court is in a better position to evaluate the prejudicial effect on the jury, its decision not to grant a mistrial is granted enormous discretion. *State v. Ford*, 867 S.W.2d 681, 684[7] (Mo.App.1993).

■ Defendant argues the trial court erred in not granting a mistrial *sua sponte* following the quoted portion of the prosecutor's closing argument because the argument "was based on facts not in evidence, personalized the case to the jury, and was a blatant appeal to convict [Defendant] based upon [Victim's] bravery in coming forward." We disagree.

■ The prosecutor's comments permissibly argued propositions such as the prevalence of crime in the community and the personal safety of its inhabitants. *State v. Plummer*, 860 S.W.2d 340, 350[28] (Mo.App. 1993). In making these types of comments,

a prosecutor is allowed to call upon the common experiences of the jurors, and may also point out the effects of the jurors' failure to perform their duties. *Id.* Furthermore, the prosecutor's comments did not improperly personalize the case to the jury as they did not suggest a personal danger to the jurors or their families if Defendant were acquitted. *See, State v. Hamilton*, 847 S.W.2d 198, 200[3] (Mo.App.1993). Point denied.

In Point III, Defendant alleges the motion court erred in denying his ineffective assistance of counsel claim. In the alternative to Point I, Defendant alleges his trial counsel was ineffective for failing to make an adequate offer of proof on the sexual contact between Victim and Kline on the evening of the rape.

■ To prevail on a claim of ineffective assistance of counsel, Defendant must establish (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See, State v. McElroy*, 838 S.W.2d 43, 48[8] (Mo.App.1992).

Any evidence of Kline's prior sexual contact with Victim earlier on the night of the rape would have been excluded even if a proper offer of proof were made, as it was not relevant to a material issue, nor was it evidence of the circumstances immediately surrounding the rape. Three eyewitnesses observed Defendant raping Victim over an hour after Kline had left the party. Further, Kline's statement to English would not have been admitted as a statement against penal interest even if this argument would have been raised at trial. Kline's statement to English would not necessarily exonerate Defendant, and it was not corroborated by any other evidence in the case. *See, State v. Twenter*, 818 S.W.2d 628, 637–38[16] (Mo. banc 1991). Counsel cannot be deemed ineffective for failing to do that which would have been futile. *State v. Stallings*, 812 S.W.2d 772, 779 (Mo.App.1991). Point denied.

Judgment affirmed.

CRANE, P.J., and CRANDALL, J., concur.