**Daniel E. CHILDS, III, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 70794.**

Missouri Court of Appeals, Western District.

July 13, 2010.

---

**3.** Though the maintenance award in *Schuh* did not deal with the allocation of marital debt, the effect is the same.

Susan L. Hogan, Kansas City, MO, for Appellant.

Robert J. Bartholomew, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, C.J., JAMES EDWARD WELSH, and KAREN KING MITCHELL, JJ.

JAMES EDWARD WELSH, Judge.

Daniel E. Childs, III, appeals the circuit court's judgment denying his Rule 29.15 motion for post-conviction relief. He claims that his defense counsel was ineffective for failing to make an adequate offer of proof of evidence he wished to present concerning the victim's past drug use. We affirm.

On May 31, 2003, the victim, M.H., was fifty-three years old and lived with her mother in Kansas City. After attending a

friend's funeral, she bought a half-pint of vodka and went to a park shelter to drink it. While M.H. was drinking in the shelter, Childs approached her, introduced himself, and told M.H. that she looked nice. Childs and M.H. talked and smoked cigarettes. Childs was also smoking from a crack pipe, utilizing M.H.'s cigarette lighter. M.H.'s lighter quit working, so Childs asked M.H. to drive him to a liquor store to get another lighter. M.H. agreed to take him.

When they arrived at the liquor store, Childs told M.H. that he could not go in and that he did not have any money, so M.H. went into the store and bought Childs a lighter. When she returned, Childs told her that he lived close by and asked her to take him home. M.H. drove according to Childs's directions until he told her to stop at an alley.

Instead of getting out of M.H.'s car, Childs reached over the center console and pushed M.H. out of her car. He then dragged M.H. up the alley and into a clearing, where he forcibly raped her. During the rape, Childs choked M.H. with his hands. Afterwards, Childs struggled with M.H. for her car keys. Childs took M.H.'s car keys, ran down the alley, and drove away in M.H.'s car.

Although she was shoeless, M.H. started to walk home. She stopped at a house along the way. Nervous and crying, M.H. asked the occupant of the home to call the police because she had been raped and her car had been stolen. When the police officers arrived, M.H. was crying and was very upset. She told the officers that she had been raped and that her car had been stolen. The officers noticed that a button was missing off the top of her dress. The officers called for an ambulance to take M.H. to the hospital. At the hospital, M.H. spoke with several detectives, and a rape kit was performed. The nurse who performed the rape kit concluded that M.H. had been assaulted. Subsequent DNA tests showed the presence of Childs's semen on a vaginal swab taken from M.H.

The next day, police officers spotted M.H.'s car. When the officers activated their emergency lights to initiate a stop, the car's driver sped up and attempted to elude the police. After leading the police on a chase, the driver crashed M.H.'s car. The driver, later identified as Childs, was arrested. M.H. identified Childs from a photo lineup as the man who had raped her and stolen her car.

Childs was subsequently charged with kidnapping, forcible rape, robbery in the second degree, tampering in the first degree, and resisting arrest. Before trial, the State filed a motion *in limine* seeking to prohibit Childs from questioning M.H. about her past drug use. While the State conceded that any evidence of M.H.'s being under the influence of drugs on the day of the incident would be relevant to M.H.'s credibility, the State argued that any evidence of M.H.'s illicit drug use in the weeks, months, or years before the incident was irrelevant and would constitute inappropriate impeachment evidence.

Childs argued that evidence of M.H.'s past drug use was relevant to M.H.'s credibility. He contended that, if the jury was aware that M.H. had a history of using crack cocaine, the jury "might look at her testimony differently." Also, Childs argued that proof of M.H.'s past drug use was relevant to prove that M.H. did, in fact, use drugs on the day of the incident. Specifically, Childs contended that M.H.'s past drug use would show that, "chances are, she used [drugs] that day, whether she admits to it or not."

The circuit court granted the State's motion *in limine* and ruled that Childs could inquire about M.H.'s drug use on the

day of the incident but not about her past drug use. Childs's defense counsel asked the court for leave to make an offer of proof during the trial through questions to M.H. The court said that it would take a recess after M.H.'s testimony to allow counsel to make his offer of proof.

During that recess, Childs's defense counsel told the court that, if M.H. testified consistently with her deposition, he expected that she would say that she used cocaine in the past but no longer buys it. Childs's defense counsel argued that this testimony would show that M.H. has a practice of using drugs but not buying them, which would support his contention that she exchanged sex with Childs for crack cocaine on the day of the incident. The court again ruled that evidence of M.H.'s past drug use was not relevant. When the court asked Childs's defense counsel if he wanted to make an offer of proof, he declined.

Childs testified in his defense that M.H. agreed to have sex with him and to let him stay at her house for awhile in exchange for his providing her seven rocks of crack cocaine. Childs claimed that, after they had sex in M.H.'s car and M.H. smoked the crack cocaine in his presence, he feared that she was going to back out of her promise to let him stay at her house. Consequently, when M.H. got out of the car to go to the bathroom, Childs decided to steal her car.

The jury found Childs guilty on all counts. In Childs's motion for judgment of acquittal or for a new trial, his defense counsel alleged that he had erred in not submitting an offer of proof. During a hearing on the motion, Childs's defense counsel argued that he was ineffective because, had he made an offer of proof, the court might have ruled differently on whether M.H.'s past drug use was admissi-

ble. The court disagreed and denied the motion.

The court sentenced Childs, as a prior offender, to ten years imprisonment for kidnapping, to be served consecutively to the forcible rape count and concurrently with all other counts; fifteen years imprisonment for forcible rape, to be served consecutively to the kidnapping, robbery, and tampering counts but concurrently with the resisting arrest count; ten years imprisonment for robbery in the second degree, to be served consecutively to the forcible rape count and concurrently with all other counts; seven years imprisonment for tampering in the first degree, to be served consecutively to the forcible rape count and concurrently with all other counts; and four years imprisonment for resisting arrest, to be served concurrently with all counts.

We affirmed Childs's convictions and sentences on direct appeal. *State v. Childs*, 257 S.W.3d 655 (Mo.App.2008). In Childs's direct appeal, Childs argued that the court erred in not admitting evidence of M.H.'s past drug use. *Id.* at 657. We found that Childs had failed to make a sufficient offer of proof to preserve the issue or to permit even plain error review. *Id.* at 658–59.

Childs filed a Rule 29.15 motion for postconviction relief, which was later amended by appointed counsel. In his amended Rule 29.15 motion, Childs alleged that his defense counsel was ineffective for failing to make a proper offer of proof. Childs claimed that evidence of M.H.'s past drug use, including her deposition testimony that she did not purchase cocaine anymore, would support his defense that M.H. was using drugs on the day of the incident and that she had willingly exchanged sex for crack cocaine from him. Childs asserted that, because his counsel had failed to make a proper offer of proof, the circuit

court excluded this "relevant and exculpatory evidence" and this court was unable to review the issue on appeal.

The circuit court denied Childs's motion after an evidentiary hearing. In its findings of fact and conclusions of law, the court found that evidence of M.H.'s prior drug use was inappropriate impeachment evidence and determined that there was no evidence that an offer of proof would have changed the outcome of Childs's trial. Childs appeals.

Our review of the denial of a Rule 29.15 motion is limited to determining whether or not the circuit court's findings and conclusions are clearly erroneous. Rule 29.15(k). We presume that the circuit court's findings of fact and conclusions of law are correct. *Edwards v. State*, 200 S.W.3d 500, 509 (Mo. banc 2006). " 'Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made.' " *Id.* (citation omitted).

Childs's burden was to establish by a preponderance of the evidence that his attorney provided ineffective assistance of counsel. Rule 29.15(i). He was obligated to show that his attorney's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney" and that his attorney's failures prejudiced his case. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998).

■ To be entitled to relief, Childs must establish both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to prove either prong negates his claim. *Clayton v. State*, 63 S.W.3d 201, 206 (Mo. banc 2001). To satisfy the performance prong of the *Strickland* test, Childs has to overcome the presumptions that counsel acted professionally and that any challenged action was sound trial strategy. *Hall*, 982

S.W.2d at 680. To satisfy the prejudice prong of the *Strickland* test, Childs "must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." *Tisius v. State*, 183 S.W.3d 207, 212 (Mo. banc 2006). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. In reviewing Childs's claims, " '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' " *Strong v. State*, 263 S.W.3d 636, 647 (Mo. banc 2008) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052).

■ In his sole point on appeal, Childs claims that defense counsel was ineffective for failing to make a proper offer of proof regarding evidence of M.H.'s past drug use. Childs argues that evidence that M.H. used drugs in the past, but did so without paying for them, was admissible because it corroborated his claims that he and M.H. engaged in consensual sex in exchange for crack cocaine and that M.H. used drugs on the day of the incident. Childs contends that his defense counsel's failure to make a proper offer of proof prejudiced him by preventing him from presenting exculpatory evidence to the jury in a case that was essentially a "swearing match." We disagree.

■ The evidence that Childs sought to introduce was inadmissible for the purposes for which he sought to introduce it. Childs wanted to use evidence that M.H. had used drugs in the past but did not pay for them as evidence of prior bad acts upon which the jury could judge her credibility. Childs also wanted to use this evidence to argue that M.H.'s propensity to use drugs and to exchange sex for drugs

made it more likely than not that M.H. smoked crack cocaine with Childs on the day of the incident and had consensual sex with him in exchange for the crack. This was not proper impeachment evidence. *State v. Clay*, 975 S.W.2d 121, 141 (Mo. banc 1998). Evidence of a witness's prior drug use is not admissible as evidence of the witness's prior bad acts or of her propensity to use drugs. *Id.* "A witness cannot be impeached by ... proof of any specific act indicating moral degeneration." *State v. Wolfe*, 13 S.W.3d 248, 258 (Mo. banc 2000). "As a general rule, impeachment evidence 'should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity[.]'" *State v. Couch*, 256 S.W.3d 64, 68 (Mo. banc 2008) (quoting *Wolfe*, 13 S.W.3d at 258). Evidence of M.H.'s past drug use does not necessarily bear upon her reputation for truth and veracity.

Childs argues that, where the credibility of the complaining witness and the defendant is the "critical consideration" in a case, "evidence of specific instances of the complaining witness's prior conduct can be admitted to show that the witness's later conduct was in conformance with her prior conduct." To support his argument, he cites *State v. Long*, 140 S.W.3d 27 (Mo. banc 2004), and *State v. Murray*, 842 S.W.2d 122 (Mo.App.1992). Childs reads *Long* and *Murray* too broadly. *Long* pro-

vides only a "limited exception to the general rule of inadmissibility of extrinsic evidence of specific prior acts of misconduct by the victim." *State v. Wilson*, 256 S.W.3d 58, 59 (Mo. banc 2008). "[T]he *Long* exception applies only when the impeaching incident involves a prior false allegation to persons in authority implicating a specific person and involving the same or substantially similar circumstances as the present allegation." *Id.* Likewise, *Murray* concerned only the admissibility of specific instances of prior consensual sexual contact between the complaining witness and the defendant under section 491.015, RSMo, the "rape shield" law, where the defense was consent. 842 S.W.2d at 123–26. *Long* and *Murray* are inapposite to this case.

■ Because the evidence that Childs sought to introduce was inadmissible, he suffered no prejudice from his defense counsel's failure to make a proper offer of proof.[1] The circuit court did not clearly err in denying Childs's Rule 29.15 motion.[2] We affirm the circuit court's judgment.

All concur.

---

1. Further undercutting Childs's assertion of *Strickland* prejudice is the fact that Childs's defense-M.H. smoked the crack cocaine that she had obtained from him in exchange for consensual sex-was refuted by the medical professionals who treated M.H. after the incident. Both the paramedic and the nurse who treated M.H. testified that M.H. exhibited no signs or symptoms of drug use. The paramedic also testified that, if M.H. had smoked the quantity of drugs alleged within the time frame alleged, M.H. would have exhibited signs of it. In light of this evidence, we fail to

see how evidence of M.H.'s past drug use, even if it were admissible, would have changed the outcome of the trial.

2. In his argument, Childs sets out at length the portion of his direct appeal in which we found that the offer of proof was too deficient to permit even plain error review. *Childs*, 257 S.W.3d at 658–59. To the extent that Childs bases any claim of ineffectiveness on the failure to preserve the admissibility of the evidence for appellate review, such a claim is not cognizable in a Rule 29.15 motion. *Ever-*

*age v. State,* 229 S.W.3d 99, 102–03 (Mo.App. 2007).